UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACQUELINE C.,[1]

                        Plaintiff,            **DECISION AND ORDER**

v.                                                1:23-cv-929-JJM

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) and §1383(c)(3) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [12, 18].[2] The parties have consented to my jurisdiction [25]. Having reviewed their submissions [12, 18, 24], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 923-page administrative record [5, 6] is presumed. On September 23, 2020, plaintiff filed an application for supplemental security income. Administrative Record [5] at 17. Plaintiff alleged conditions relating to her neck, stomach, hands, and back, as well as depression and anxiety. Id. at 92. Plaintiff's claim was initially denied and denied again on reconsideration. Id. at 17. Plaintiff requested a hearing. Id.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

A.     **The Hearing**

On March 24, 2022, Administrative Law Judge ("ALJ") Linda Crovella conducted a video hearing. [5] at 32-90. Plaintiff was represented by an attorney. Id. At the hearing, ALJ Crovella asked plaintiff's attorney if the record was complete, and plaintiff's attorney responded that the only outstanding records were from the Women's Wellness Center. Id. at 38. ALJ Crovella kept the record open for 10 days with the opportunity to request an extension. Id. at 39.

Plaintiff testified that she lived in an apartment with her nine-year-old son, whom she took care of. Id. at 43, 48. She received help from her sister-in-law with driving, shopping, cooking, and getting down the stairs due to movement issues and pain. Id. at 45-46. She had recently developed a painful abdominal hernia. Id. at 53, 58-59. She would get agitated with people outside of her home. Id. at 73. She had difficulty sleeping. Id. at 74. She experienced problems with concentration and memory. Id. at 75.

A vocational expert testified that a person with limitations consistent with ALJ Crovella's findings could perform work in the national economy. Id. at 80-82. The expert testified that an individual could be off-task 10% of the day and still perform those jobs, but that 15% time off task would be work preclusive. Id. at 84.

B.     **The ALJ's Decision**

ALJ Crovella issued a Notice of Decision denying plaintiff's claim. Id. at 14-31. She found that plaintiff had severe impairment(s) of degenerative disc disease of the cervical and lumbar spine. Id. at 19. She determined that plaintiff's mental impairments of bipolar disorder, depressive disorder, and anxiety disorder were non-severe because plaintiff "sought only conservative treatment" and because no mental status examination indicated behavioral or

cognitive deficits. Id. at 20-21. She concluded that plaintiff would have "no more than 'mild' limitations" in any area of mental functioning. Id. at 21.

ALJ Crovella found that plaintiff retained the residual functional capacity ("RFC") to perform a "reduced range of light work" with certain postural and other limitations. Id. at 22. She found that plaintiff would be "off task" for 10% of the workday. Id.

While plaintiff had no past relevant work, ALJ Crovella found that there were jobs that existed in significant numbers in the national economy that she could perform. Id. at 25-26. Accordingly, she found that plaintiff was not disabled. Id. at 26.

**C.    Relevant Medical Evidence**

Frederick Elliott, M.D. was plaintiff's primary care physician from 2017 through the relevant period, and treated plaintiff at various times for hip pain, opioid dependence in remission, uterine cysts, constipation, cannabis abuse, nicotine dependence, bipolar disorder, and neck pain. Id. at 253, 523-74, 691-745. Dr. Elliott prescribed plaintiff mental health medications and sleep aids, including Bupropion, Seroquel, and Oxcarbazepine. See id. at 251.

On January 27, 2022, Dr. Elliott completed a "Medical Examination for Employability Assessment [etc.]", which listed plaintiff's medical conditions as chronic neck pain, anxiety and depression, and chronic hernia. Id. at 701. He checked the boxes indicating that plaintiff was "very limited" in all physical functions and "moderately limited" in all mental functions. Id. at 702. On March 3, 2022, Dr. Elliott completed a "Medical Opinion Re: Ability to Work-Related Activities" form, in which he opined that plaintiff would have significant exertional and postural limitations, that pain impaired her ability to concentrate, and that her impairments would cause her to miss "more than three" days of work per month. Id. at 691-94.

On December 3, 2020, consultative examiner Susan Santarpia, Ph.D., conducted a psychiatric evaluation of plaintiff. Id. at 601. Dr. Santarpia recognized diagnoses for unspecified depressive disorder, unspecified anxiety disorder, and cannabis dependence/abuse. Id. at 604. Plaintiff's mental status examination indicated that she was cooperative, with an adequate manner of relating and overall presentation. Id. at 602. Her attention and concentration were mildly impaired in that she could do one-step, but not two-step, mathematical problems. Id. at 602-03. Dr. Santarpia opined that plaintiff would be able to understand, remember, and apply simple and complex directions and instructions, use reason and judgment to make work-related decisions, interact adequately with others, sustain concentration and perform a task at a consistent pace, and sustain an ordinary routine and regular attendance at work. Id. at 603. She opined that plaintiff had mild impairments in regulating emotion, controlling behavior, and maintaining well-being, and that some of her difficulties were caused by lack of motivation. Id. at 603. Dr. Santarpia examined plaintiff again on April 6, 2021 and drew largely the same conclusions, except for an additional finding that certain difficulties were related to pain. Id. at 618-21.

On December 15, 2020, state agency psychologist J. May, Ph.D., reviewed plaintiff's records, her activities of daily living, and Dr. Santarpia's report, and concluded that plaintiff's mental impairments were "well controlled with medication and therefore non severe". [5] at 96-97. Dr. May noted that Horizon Health and plaintiff's primary care physician had not responded to requests for records. Id. at 97.

On April 6, 2021, consultative medical examiner Thomas Kowalak, M.D., examined plaintiff and reported complaints of difficulty walking due to back pain, but that plaintiff was able to help with cleaning, laundering, shopping, and childcare. Id. at 612-13.

Examination findings were largely normal with some limits in range of motion and decreased grip strength bilaterally. Id. at 613-14. Dr. Kowalak opined that Plaintiff had "moderate limitations" in lifting, prolonged ambulation, and moving her neck. Id. at 615.

On April 28, 2021, state agency psychologist S. Bhutwala, Ph.D., reviewed the record and Dr. Santarpia's re-evaluation report and found no severe mental impairments. Id. at 115-17. Dr. Bhutwala noted that Horizon Health had still not responded to requests for records, but that Horizon records from plaintiff's previous SSI application had been added to the file. Id. at 116.

## ANALYSIS

Plaintiff argues that ALJ Crovella's decision was legally deficient because: (1) she failed to find any mental health impairments to be severe or to account for any mental or social limitations in her RFC; and (2) the off-task limitation in her RFC was not based on substantial evidence. Plaintiff's Memorandum of Law [12-1] at 16-31.

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It

requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator evaluating a claim for Social Security benefits employs a five-step sequential process. See Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.     Did the ALJ properly assess plaintiff's mental health impairments?**

Plaintiff argues that ALJ Crovella failed to properly assess her mental health impairments as "severe" or to account for any mental or social limitations in her RFC. Plaintiff's Memorandum of Law [12-1] at 16-21. In partial support, she attaches a prior treating source opinion that was not included in the administrative record. Id. at 19; Plaintiff's Appendix [12-2] at 1-8.

**1.     Completeness of the Medical Record**

Plaintiff produces a "Mental Impairment Questionnaire" dated September 27, 2019, which was omitted from the administrative record, wherein treating mental health counselor Shannon Allen, LMHC opined that plaintiff had "marked" limitations interacting with others and in adapting or managing oneself. [12-1] at 19; [12-2] at 2, 6. The Commissioner argues that because Ms. Allen's opinion predates the relevant period and was considered in connection with a previous disability application, it is irrelevant. [18-1] at 23. Plaintiff argues that the absence of this document from the record demonstrates that there was an "obvious gap" in the record that the ALJ failed to address. [24] at 6.

Social Security regulations state that the Commissioner "will develop your complete medical history for at least the 12 months preceding the month in which you file your application", except when the disability is alleged to have begun earlier than that. 20 C.F.R. §§404.1512(b)(1); 416.912(b)(1). A "[c]omplete medical history means the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application". §§404.1512(b)(1)(ii); 416.912(b)(1)(ii). Presuming that the questionnaire was maintained by Horizon Health Services as a medical record, it would fall just within the 12-month window contemplated by the regulations.

However, Horizon Health Services did not respond to the Commissioner's requests for records. See [5] at 97, 116. By letter dated January 20, 2022, plaintiff's attorney requested records from Horizon Health Services "from October 2019 to the present". [6] at 746. Records from that period appear to have been produced. See id. at 747-920. The Commissioner also incorporated records from Horizon Health ranging from December 6, 2018 to September 17, 2019, apparently from a previous application by plaintiff. See id. at 422-521; [12-1] at 19.

It is left unexplained why the September 27, 2019 questionnaire was not also incorporated, as it was part of the record in the previous application. See Commissioner's Memorandum [18-1] at 23 ("[the questionnaire] was already evaluated when Plaintiff's prior application for benefits was denied"). Still, when ALJ Crovella asked plaintiff's attorney at the hearing, she did not suggest that any Horizon Health records were missing. [5] at 38-39. Nor did she reach out to ALJ Crovella during the post-hearing period in which the record remained open. See id. Nor was the issue of missing records raised to the Appeals Council. Thus, plaintiff raises the issue of this omission, for the first time, on appeal to this court.

"To be sure, a hearing on disability benefits is a non-adversarial proceeding[, and a]n ALJ generally has an affirmative duty to develop the administrative record" (Schillo v. Kijakazi, 31 F.4th 64, 76 (2d Cir. 2022)), but this obligation "is not unlimited". Martin v. Saul, 2020 WL 5096057, *4 (W.D.N.Y. 2020). "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel'." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citation omitted). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history', the ALJ is under no obligation to seek additional information". Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996); see Timothy D. v. Commissioner of Social Security, 652 F. Supp. 3d 387, 394 (W.D.N.Y. 2023).

In addition, while obtaining relevant medical records in a disability proceeding is meant to be a collaborative effort, it is ultimately plaintiff's burden to demonstrate that she is under a severe impairment. See Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013); Ayesha W. v. Commissioner of Social Security, 2022 WL 1308166, *11 (W.D.N.Y. 2022). It is also reasonable for the ALJ to rely on a representation from plaintiff's counsel that the record is complete. See, e.g., Curley v. Commissioner of Social Security, 808 F. App'x 41, 44 (2d Cir. 2020) (rejecting an argument that the ALJ failed to develop the record when, inter alia, plaintiff's hearing attorney declined to indicate that the records were outstanding).

Moreover, plaintiff does not establish the relevance of the questionnaire to this proceeding. The questionnaire appears to be purely a statement of medical opinion, not a treatment record. See 20 C.F.R. §416.913(a)(2) ("[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions"). The questionnaire does not reflect that

Ms. Allen performed any contemporaneous examination of plaintiff. As Ms. Allen's opinion predates the relevant evaluation period by nearly a year, the ALJ would not have been required to consider it – particularly where there were more timely medical opinions in the record. *See* Rachel D. v. Commissioner of Social Security, 573 F. Supp. 3d 892, 899-900 (W.D.N.Y. 2021) ("these statements, which describe Plaintiff's condition as it existed on a certain date, pre-date the relevant period of disability . . . and therefore the ALJ was not required to consider them"). Finally, the questionnaire was created for consideration in a previous disability proceeding in which it was partially rejected, a determination which cannot be collaterally challenged here.[3]

For all these reasons, I find that the ALJ did not err in omitting the September 27, 2019 Mental Impairment Questionnaire.

### 2. Severity Determination

At step two, the ALJ must determine whether plaintiff has a medically determinable impairment, or combination of impairments, that is "severe". 20 C.F.R. §416.920(a)(4)(ii). A "severe" impairment (or combination of impairments) is a medically determinable impairment that "significantly limit[s] your physical or mental ability to do basic work activities". §416.922(a). The severity standard "is *de minimis* and is intended only to screen out the very weakest cases". McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "However, despite this lenient standard, the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe'". Ciara B. v. Commissioner of Social Security, 610 F. Supp. 3d 515, 520 (W.D.N.Y. 2022) (citations omitted).

---

[3]   That decision was upheld on appeal to this court. *See* Jacqueline C. v. Commissioner of Social Security, 2022 WL 4632226, *6-7 (W.D.N.Y. 2022).

With respect to mental impairments, the ALJ performs a so-called "special technique", specifically assessing a claimant's abilities in the four broad functional areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. §416.920a(b)-(c). The regulations further provide that "[i]f we rate the degrees of your limitation as 'none' or 'mild', we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities". §416.920a(d)(1).

Here, ALJ Crovella was persuaded by assessments of Dr. Santarpia, Dr. May, and Dr. Bhutwala that plaintiff's mental impairments would cause "no more than 'mild' limitations" in any functional area. Id. at 21. She found Dr. Elliot's opinion of greater limitations to be unpersuasive given plaintiff's conservative treatment history, the lack of mental status findings indicative of behavioral or cognitive defects, and the fact that plaintiff herself primarily attributed her functional limitations to her physical conditions. Id. That is sufficient rationale to support the ALJ's finding that an impairment is non-severe. See, e.g., Brian M. v. Commissioner of Social Security, 2023 WL 4867263, *4 (W.D.N.Y. 2023) ("[plaintiff's] conservative and inconsistent course of . . . treatment is inconsistent with a level of severity that would preclude [her] from sustaining any work activity").

Further, the court is obligated to "defer to the [ALJ's] resolution of conflicting evidence" and reject his findings "only if a reasonable factfinder would have to conclude otherwise". Morris v. Berryhill, 721 F. App'x 25, 29 (2d Cir. 2018) (citations omitted). While plaintiff points to her testimony in support of greater limitations, ALJ Crovella discounted that testimony in favor of other evidence. See [5] at 20-21. Such first-person credibility

determinations are entitled to "great deference". *See, e.g.*, Christina J. v. Commissioner of Social Security, 695 F. Supp. 3d 357, 362 (W.D.N.Y. 2023).

Plaintiff argues that ALJ Crovella nonetheless erred by failing to account for her mental impairments in formulating her RFC. [12-1] at 16, 20-21. It is true, as ALJ Crovella herself stated, that the functional assessments at step two are distinct from the RFC determination, and that the RFC determination requires a discrete assessment of such limitations. *See* [5] at 21; 20 C.F.R. §416.945(a)(2) ("[w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your [RFC]"). ALJ Crovella did not separately discuss plaintiff's mental impairments in conjunction with her RFC determination, but did state generally that "all medically supported restrictions have been incorporated into the decision's residual functional capacity assessment, including those stemming from both severe and non-severe impairments". [5] at 21.

While such a boilerplate statement from the ALJ may be something less than what is suggested by the regulations, "[n]o principle of administrative law or common sense requires a court to remand a case in quest of a perfect ALJ opinion". Smith v. Berryhill, 740 F. App'x 721, 725 (2d Cir. 2018). Moreover, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of [her] decision'". Cichocki v. Astrue, 729 F.3d 172, 178 n. 3 (2d Cir. 2013). Here, it is clear from ALJ Crovella's detailed discussion at step two that she did not believe plaintiff's mental impairments were significant enough to warrant greater restrictions than those listed in the RFC.

Indeed, as a non-severe impairment is one that does not "significantly limit your physical or mental ability to do basic work activities" (§416.922(a)), it will often be the case that

a non-severe impairment does not impact the RFC determination. Accordingly, the caselaw holds that "[w]here an ALJ's assessment of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC". Grace M. v. Commissioner of Social Security, 2022 WL 912946, *3 (W.D.N.Y. 2022); see also Christian H. v. Commissioner of Social Security, 2022 WL 3648022, *4 (W.D.N.Y. 2022) ("if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions").

For these reasons, I find that ALJ Crovella's treatment of plaintiff's mental impairments was legally sufficient and supported by substantial evidence.

**C.     Off-task limitation**

Plaintiff argues that the 10% off-task limitation of ALJ Crovella's RFC was not supported by substantial evidence. Plaintiff's Memorandum of Law [12-1] at 22-31. ALJ Crovella explained that she added that limitation "[d]ue to [plaintiff's] ongoing pain". [5] at 25.

On appeal, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether [her] determination is supported by substantial evidence". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). It is well-established that the ALJ, not any medical source, is responsible for formulating a claimant's RFC. See 20 C.F.R. §§404.1546(c), 404.1527(d)(2), 416.946(c), 416.927(d)(2); see Curry v. Commissioner of Social Security, 855 F. App'x 46, 48 (2d Cir. 2021). As such, the RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision", and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013); see Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir.

2022). Ultimately, "[t]he question is . . . whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 F. App'x 98, 101 (2d Cir. 2017)).

Plaintiff objects to the ostensible specificity of ALJ Crovella's off-task percentage, which some decisions have suggested is improper without such finding being firmly tethered to specific medical or testimonial evidence. *See*, *e.g.*, Cheek v. Commissioner of Social Security, 2020 WL 2028258, *5 (W.D.N.Y. 2020). However, while ALJs should indeed be careful not to formulate highly specific RFCs based solely on their "own surmise" (*see* Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014)), modest off-task findings such as the one at issue here are merely intended to reflect mild or effectively *de minimis* off-task limitations in deference to documented issues. *See* Johnson v. Colvin, 669 F. App'x 44, 47 (2d Cir. 2016) ("[plaintiff] takes issue with the specificity of the ALJ's '10%' finding. . . . [H]owever, the ALJ's 'no more than 10%' limitation was 'a percentage which reflected [plaintiff's] ability to maintain employment despite the potential to be minimally slower than average"). Likewise, I find that the apparent specificity of ALJ Crovella's off-task finding does not, without more, render her RFC determination unsupported by substantial evidence.

It is also not *per se* error for an ALJ to incorporate more restrictions into the RFC than deemed necessary by a medical opinion. On the contrary, "[w]here an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." Baker v. Berryhill, 2018 WL 1173782, *2 (W.D.N.Y. 2018); *see also* Catalfamo v. Berryhill, 2019 WL 1128838, *2 (W.D.N.Y. 2019) (rejecting an argument that the ALJ erred by "impos[ing] more restrictions than th[e medical] opinions suggested were necessary"); Glab v. Commissioner of Social Security, 2018 WL 3422062, *3 (W.D.N.Y. 2018) ("[t]he fact that the

ALJ's RFC conclusion was more restrictive in some aspects than [a medical] opinion . . . does not establish that the ALJ was relying on his own lay opinion").

"Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman v. Commissioner of Social Security, 2020 WL 473618, *6 (W.D.N.Y. 2020). Plaintiff does not point to any medical evidence of record that would require a greater time-off-task determination. Thus, this case is distinguishable from the court's decision in Cosnyka. See 576 F. App'x at 46 (finding the ALJ's 10% off-task finding unsupported where the orthopedic examiner reported that plaintiff would need "regular comfort breaks" and where plaintiff testified that he would need breaks of up to 15-20 minutes).

For all these reasons, I find that ALJ Crovella's time-off-task limitations did not violate the relevant legal standards and was supported by substantial evidence.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [18] is granted, and plaintiff's motion [12] is denied.

**SO ORDERED**.

Dated: March 9, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge